```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

ROCKWATER, INC. d/b/a PEERLESS      *
MANUFACTURING COMPANY,
                                    *
     Plaintiff,
                                    *
vs.                                            CASE NO. 4:21-CV-125 (CDL)
                                    *
UNITED STATES OF AMERICA,
                                    *
     Defendant.
                                    *
```

O R D E R

This tax refund action presents the issue of whether peanut drying semitrailers ("drying trailers") designed and sold by Plaintiff Rockwater, Inc. ("Rockwater") are subject to the 12% federal excise tax applicable to heavy trucks and trailers sold at retail. Rockwater argues that its drying trailers are specially designed for the primary function of transporting peanuts for drying purposes in a manner other than over the public highway and that this special design substantially limits or impairs the drying trailers' capability to transport the peanuts over the public highway. Accordingly, it maintains that these drying trailers are not subject to the excise tax. The Government responds that the drying trailers are designed for use on the public highway and that the design does not substantially limit or impair such use; thus they are subject to the tax.

Pending before the Court are the parties' cross-motions for summary judgment.  As discussed in the remainder of this Order, the Court finds as a matter of law that the drying trailers are specially designed for the primary function of transporting peanuts for drying purposes in a manner other than over the public highway and that the special design substantially limits or impairs the drying trailers' capability to transport the peanuts over the public highway.  Therefore, they are not subject to the excise tax.  Consistent with this holding, the Court further finds that Rockwater had a good faith basis for contesting the tax and delaying payment; consequently, it is not liable for penalties and interest.  Accordingly, Rockwater's motion for summary judgment (ECF No. 15) is granted and the Government's motion (ECF No. 16) is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the

outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

**I.   The Peanut Harvesting Process and Rockwater's Role in It**

Many of the material facts in this action are undisputed. Almost half of all peanuts produced in the United States are harvested in Georgia between September and early November.  During this eight to ten week harvesting season, peanuts must be properly dried, or their quality and price may decline substantially.  The drying process begins when the farmer digs up the peanut plants from the ground using a combine and thereby exposes the peanuts to sunlight for one to two days.  Next, the farmer loads them on specialized equipment—here, Rockwater's drying trailers—for transport offsite for further drying.  The drying trailers are primarily designed to facilitate the drying of the peanuts, but they also accommodate the transporting of the peanuts short distances from the field to the site where the drying process is completed.

Typically, the loaded drying trailers travel approximately twenty miles from the field to the drying site.  On average, two-thirds of the trip is made on a public highway.  The drying trailers are designed to be hooked up directly to a dryer at the drying site so that the peanuts can be dried for an additional twenty-

one to twenty-four hours.  The design of the drying trailers allows them to then be loaded onto a specialized dock that is raised at an angle to allow the peanuts to fall by gravity out of a top-hinged door at the back of the drying trailers.  The peanuts are then unloaded into warehouse containers and transported to shellers, processors, and end users in a traditional cargo-hauling semitrailer.  The empty drying trailer travels back to the field and the process repeats until the end of peanut harvesting season.  After harvesting season ends, the drying trailers sit idle for the next forty-two to forty-four weeks.  The drying trailers spend approximately 3% of the harvest season and 1% of their lives on the public road.

**II. The Special Design of Rockwater's Semitrailers**

Rockwater designed its drying trailers to facilitate the peanut drying process.  They consist of a drying box welded to a chassis.  The drying trailers all have drying boxes that are 8 feet tall.  Further, Rockwater built each drying trailer with either a 45-foot or 48-foot chassis repurposed from a used Department of Transportation-ready chassis.  Dykes Dep. 30:19-21, ECF No. 15-5; Def.'s Mot. Summ. J. Ex. E, Chart, ECF No. 16-7 (rows 4, 5, and 6).  Each drying trailer has a gross vehicle weight rating of 61,900 pounds.

Rockwater's drying trailers are different from traditional semitrailers that are designed to haul cargo.  First, unlike

4

traditional semitrailers—usually made of wood and aluminum—Rockwater's drying trailers are made of steel. The steel prevents moisture from sticking to the peanuts, but adds substantial weight to the drying trailers, thus impairing their use as a cargo trailer on public highways. Second, unlike traditional semitrailers, Rockwater's drying trailers have an open top. The open top permits the top-loading of peanuts into the drying box in the field and allows moisture to escape while the peanuts dry. Rockwater's drying trailers also have a special design feature that includes a top-hinged door at the back that can only be opened by raising the drying trailer at an angle. To support the enlarged drying box and provide greater stability in the field, Rockwater designs each drying trailer with a modified chassis from a traditional semitrailer to include oversized sand feet, an I-beam, and steel horizontal braces. These chassis modifications, which add substantial weight to the trailer, would never be feasible for semitrailers designed for regular public highway use. Another special design feature provides for a custom drying box with a 40% perforated floor on which the peanut load rests and through which air flows to dry the peanuts. Under the perforated floor, an 18-inch plenum, or chamber, runs the length of the bottom of the box. That plenum raises the drying box's center of gravity, which increases the risk of rollover at higher speeds. At the end of the plenum is a vent to which the dryer attaches and into which

5

the dryer pumps hot air to continue the drying process.  Knowing that the nature of peanut harvesting will typically require the peanuts to be transported on a public road for short distances from the field to a drying site, Rockwater designs its drying trailers to comply with applicable highway regulations.

**III. The Tax Refund Action**

In the second quarter of 2017, Rockwater sold three peanut drying trailers—each extending to 8 feet in heighth and built on a used chassis stretching either 45 feet or 48 feet in length. Rockwater did not pay the excise tax on any of those drying trailers in 2017 or report the sales to the IRS.  After an audit, the IRS determined that the heavy highway vehicle excise tax applied to the drying trailers and assessed $29,880 in excise taxes against Rockwater for the second quarter of 2017 as well as failure to file penalties.  Rockwater paid the IRS $37,031.76 in excise taxes, penalties, and interest.  Rockwater subsequently filed a claim for refund with the IRS followed by this present complaint.

DISCUSSION

**I.   "Special Rule" for Off-Highway Transportation Vehicles**

The Internal Revenue Code (the "Code") imposes a 12% excise tax on the first retail sale of heavy (i.e, exceeding 26,000 pounds) "truck trailer and semitrailer chassis and bodies."  26 U.S.C. § 4051(a)(1), (3).  Congress did not define "truck trailer and semitrailer chassis" or "truck trailer and semitrailer

6

bodies." Instead, it left it to the IRS to do so through Treasury regulations. *Id.* § 7805(a); *id.* § 4051. This regulatory process has created confusion over the years with the repeal and revision of the applicable regulations. The courts have sometimes added to the confusion as they attempted to ascertain the applicable language which they struggled to interpret in light of regulatory guidance and often conflicting case law. In an attempt to make sense of the mess, the Court begins with the statute enacted by Congress followed by a discussion of the applicable regulations.

The plain language of the statute, when read in isolation, provides that any trailer chassis or body weighing over 26,000 pounds that is sold for the first time at retail shall be subject to a 12% federal excise tax. *Id.* § 4051(a)(1), (3). Congress authorized the IRS to put meat on the bones of this bare statute through the promulgation of Treasury Regulations. *Id.* § 7805(a); *id.* § 4051. Those regulations establish a "special rule" applicable to trailer chassis and bodies. According to the regulations, chassis and bodies are taxable "only if such chassis or body is sold for use as a component part of a highway vehicle." Treas. Reg. § 145.4051-1(a)(2) (as amended in 2000). Thus, chassis and bodies that are not component parts of a "highway vehicle" are not subject to the excise tax. The next question is what is a "highway vehicle" for purposes of this regulatory scheme. That question can be answered by examining Congress's clarification of

7

what a "highway vehicle" *is not*. *See* 26 U.S.C. § 7701(a)(48). Some courts, when interpreting § 7701(a)(48)(A)'s past iterations as a regulation, refer to this definitional narrowing of the term as an "exemption" or "exception." The applicable statutory language is as follows:

> (48) Off-highway vehicles.--
>
> (A) Off-highway transportation vehicles.--
>
> (i) In general.--A vehicle shall not be treated as a highway vehicle if such vehicle is specially designed for the primary function of transporting a particular type of load other than over the public highway and because of this special design such vehicle's capability to transport a load over the public highway is substantially limited or impaired.
>
> (ii) Determination of vehicle's design.--For purposes of clause (i), a vehicle's design is determined solely on the basis of its physical characteristics.
>
> (iii) Determination of substantial limitation or impairment.--For purposes of clause (i), in determining whether substantial limitation or impairment exists, account may be taken of factors such as the size of the vehicle, whether such vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles, and whether such vehicle can transport a load at a sustained speed of at least 25 miles per hour. It is immaterial that a vehicle can transport a greater load off the public highway than such vehicle is permitted to transport over the public highway.

*Id.* § 7701(a)(48)(A)(i)–(iii).

Based on the foregoing, the Rockwater drying trailers are not subject to the excise tax if (1) the drying trailers were specially designed, as determined solely on the basis of their physical characteristics, for the primary function of transporting peanuts

8

other than over the public highway; and (2) because of this special design the drying trailers capability to transport a load of peanuts over the public highway is substantially limited or impaired. The undisputed evidence is clear that the drying trailers were specially designed to transport peanuts for drying purposes in a manner other than over the public highways. While the drying trailers could certainly function at a minimum capacity on the public highway, the special design features are focused primarily on allowing the vehicle to operate efficiently and effectively to accomplish the drying of the peanuts. Almost none of the special design features reflect a primary purpose of hauling peanuts as cargo on the public highway. The modifications to the chassis, with the accompanying extra weight, are focused on the drying function. The special design features allow for the vehicle to maneuver in the fields, on the private roads, and at the stationary drying sites in a manner that achieves its primary purpose—effective and efficient drying of peanuts. The Court finds that no reasonable juror could conclude otherwise, and therefore, this prong of the "special rule" has been satisfied as a matter of law.

Rockwater also makes a convincing argument that this special design substantially limits or impairs the drying trailers' capability to transport a load over the public highway. The added weight reduces the economic feasibility of using the vehicle on

9

the highway. And the nature of the modifications that raise the center of gravity affects the vehicle's safety on the public roadway. Although the drying trailers require no special permits, the limitations substantially limit its transporting capabilities on the public roadway. In essence, the design allows the vehicle to meet minimum highway standards while focusing on the drying function of the trailer. The fact that these drying trailers are only used eight to ten weeks out of the year and, even during their periods of heaviest use, sit stationary for over 90% of the time, confirms this common-sense conclusion. The Court acknowledges that some evidence exists to the contrary. For example, the drying trailers can maintain a sustained speed in excess of 25 miles per hour, satisfy regulatory height and weight requirements, and are not subject to special licensing or safety requirements. *See id.* § 7701(a)(48)(A)(iii). But the fact that the vehicle *can* operate safely and legally on the highway is not dispositive. The statute recognizes that other factors may be considered. *See id.* ("account may be taken of factors *such as*" (emphasis added)). The question is whether the special design *substantially* impairs or limits the vehicle's capability to transport a load over the public highway. "Substantially" means to a "considerable," "significant," or noticeable degree. *Substantially*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/substantially; *see Substantial*, Black's Law Dictionary (11th ed. 2019). "Impair"

means to make less effective, *Impair*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/impair, and "limit" means to restrict, encumber, or constrain, *Limit*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/limit.  Clearly, the drying trailer design restricts or encumbers or makes less effective to a considerable or noticeable degree the drying trailer's capability to transport a load over the public highway.  Because the undisputed facts upon which this conclusion is based lead only to this one reasonable conclusion, Rockwater has satisfied this second prong of the "special rule" as a matter of law.  Having found that both prongs of the "special rule" have been satisfied, Rockwater's motion for summary judgment is granted.[1]

## II.  The Mobile Machinery Exemption

Rockwater also argues that its drying trailers meet the mobile machinery exemption to the excise tax.  26 U.S.C. § 4053(8).  In light of the Court's ruling that Rockwater is entitled to summary judgment under the special "off highway vehicle rule," it is not necessary for the Court to address this alternative argument.  But for the sake of completeness and to avoid an unnecessary remand

---

[1] The Court has not located any binding precedent on these issues.  The closest Eleventh Circuit precedent it found is consistent with today's ruling but admittedly involved the interpretation of slightly different regulatory language.  *See Big Three Indus. Gas & Equip. Co. v. United States*, 329 F. Supp. 1273 (S.D. Tex. 1971), *aff'd*, 459 F.2d 1042 (5th Cir. 1972) (per curiam).

11

should the Court of Appeals disagree with the Court's previous rulings, the Court finds it appropriate to do so. The mobile machinery exemption is available for certain vehicles which have as their sole function carrying machinery or equipment and which could not transport any other load "without substantial structural modification." *Id.* As the Court explained previously, the drying trailers' design accommodates the transport of peanuts to carry out the drying process. Their *sole* function is not to carry machinery or equipment; nor are they unable to transport loads other than machinery or equipment. Accordingly, Rockwater's drying trailers would not be exempt under the mobile machinery exemption.

### III. Penalties

As noted previously, the IRS imposed penalties and interest based upon Rockwater's delay in paying the disputed tax. To avoid a penalty due to a delay in filing, the Code requires taxpayers to show (1) reasonable cause for the delay and (2) that the delay did not result from willful neglect.[2]  *Id.* § 6651(a). As the Court has explained, Rockwater certainly had reasonable cause for the delay. It had a good faith basis for believing that it did not owe the tax. The Court's findings in today's Order vindicate Rockwater's delay in paying the tax and establish as a matter of

---

[2] The Government does not contend that Rockwater's delay in filing the excise tax was the product of willful neglect.

law that the penalties and interest are not owed. Even if it were determined that Rockwater owed the tax, it still had reasonable cause not to pay it initially. The evidence is undisputed that its belief that it did not owe the tax was supported by advice from tax professionals. Good faith reliance on professional tax advice may constitute reasonable cause in some circumstances. *United States v. Boyle*, 469 U.S. 241, 250-51 (1985). The record establishes that Rockwater made substantial efforts to get competent advice from qualified tax professionals to assess its potential tax liability for the drying trailers on multiple occasions. *See Gustashaw v. Commissioner*, 696 F.3d 1124, 1139 (11th Cir. 2012) (stating, in the context of a different penalty provision, "The most important factor . . . is the 'extent of the taxpayer's effort to assess [its] proper tax liability." (quoting Treas. Reg. § 1.6664-4(b)(1))). The advice that Rockwater received, which came from its longstanding accounting firm after detailed discussions about the drying trailers, was both factually particularized and legally informed. *Stovall v. Commissioner*, 762 F.2d 891, 895 (11th Cir. 1985) (explaining that a tax professional's advice must be informed for a taxpayer to reasonably rely on it). Under these circumstances, Rockwater had reasonable cause for any delay in paying the tax. Because Rockwater does not owe the tax, and alternatively because it otherwise had reasonable cause for its delay in paying it, neither penalties nor interest

13

are appropriate. Accordingly, summary judgment is granted in favor of Rockwater on this issue.

## CONCLUSION

For the foregoing reasons, Rockwater's motion for summary judgment (ECF No. 15) is granted, and the Government's motion (ECF No. 16) is denied. Judgment shall be entered in favor of Rockwater in the amount of $37,031.76.[3]

IT IS SO ORDERED, this 10th day of April, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[3] The only remaining issue is Plaintiff's claim for attorneys' fees. Because the current record is adequate for making a determination of this issue and additional briefing is unnecessary to assist the Court, the Court finds it appropriate to decide this issue in this Order. Although the Court found the Government's arguments in support of its imposition of the tax unpersuasive, they are not substantially unjustified. 26 U.S.C. § 7430(c)(4)(B). Decisions by the Courts of Appeals support this conclusion. *Id.* § 7430(c)(4)(B)(iii). Therefore, Rockwater is not entitled to recover its attorneys' fees.